**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DREW TECHNOLOGIES, INC.,

    Plaintiff,

v.                                              Case No. 11-15068

ROBERT BOSCH, L.L.C.,

    Defendant.
                                         /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART "MOTION TO DISMISS, TRANSFER, OR STAY SECOND-FILED ACTION," CANCELLING MOTION HEARING, AND DISMISSING CASE WITHOUT PREJUDICE**

Pending before the court is Defendant Robert Bosch, L.L.C.'s ("Bosch's") "Motion to Dismiss, Transfer, or Stay Second-Filed Action." Plaintiff Drew Technologies, Inc. ("Drew") filed a response to the motion, and the court concludes that a hearing is not necessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant in part and deny in part the motion.

**I. BACKGROUND**

This patent-infringement dispute involves an automotive technology known as a "pass-thru" device, which connects a vehicle's Engine Control Unit ("ECU") to a personal computer in order to facilitate updates and status checks of the software running the ECU. (Compl. ¶ 14, Dkt. # 1.) Since 2000, Drew has manufactured and sold pass-thru devices under the brand name CarDAQ. (*Id.* ¶ 13.) One of Drew's customers, Snap-On Inc. ("Snap-On"), resells the CarDAQ systems it purchases from

Drew under the brand name Pass-Thru Pro II.  (*See id.* ¶¶ 17, 19; Herron Decl. ¶ 9, Dkt. # 12-5.)

On September 20, 2011, Bosch filed a lawsuit in the Central District of California against Snap-On, claiming that Snap-On's sale of Pass-Thru Pro II products directly infringes Bosch's U.S. Patent No. 6,782,313 (the "'313 patent").  (Compl. ¶ 15; C.D. Cal. Compl. ¶¶ 1, 15, Dkt. # 12-2.)  At the time Bosch initiated the California litigation, Bosch and Snap-On were embroiled in another patent-infringement suit in the Northern District of Illinois; in fact, Bosch filed the California complaint the day before a mediation was scheduled to occur in the Illinois case.  (Blake Decl. ¶¶ 4-5, Dkt. # 12-3.)

After Drew learned of Bosch's suit against Snap-On, representatives of Drew and Bosch held multiple meetings regarding Bosch's infringement allegations throughout September, October, and November of 2011.  (Compl. ¶ 20; Herron Decl. ¶ 17.)  At a meeting on October 3, 2011, between Drew's President, Michael Drew, Drew's Vice President, Brian Herron, and the Vice President of Bosch's Diagnostics Business Unit, James Granniger, the Drew representatives explained that Drew manufactured the Pass-Thru Pro II system and was required to indemnify Snap-On in the California litigation.  (Drew Decl. ¶ 17, Dkt. # 12-4; Herron Decl. ¶ 19.)  The Drew representatives also informed Granniger that the Pass-Thru Pro II systems were functionally equivalent to Drew's CarDAQ devices, and they expressed their view that none of Drew's products infringed the '313 patent, which they considered invalid. (Drew Decl. ¶ 17; Herron Decl. ¶ 19; *see also* Compl. ¶ 21.)  During a telephone conversation between Granniger and Herron on October 24, 2011, Granniger reiterated Bosch's belief that Drew and Snap-On were infringing the '313 patent and urged Drew to consider licensing the patent,

while Herron continued to deny that any of Drew's products infringed the patent. (Herron Decl. ¶ 20; *see also* Compl. ¶ 21.) On November 2, 2011, Michael Drew, Herron, and Granniger met for the second time at a trade show in Las Vegas, Nevada; both sides indicated that their positions regarding the alleged infringement had not changed and Granniger again offered to license the '313 patent to Drew. (Compl. ¶ 22; Drew. Decl. ¶ 18; Herron Decl. ¶ 21.) Granniger telephoned Herron on November 14, 2011, to inform him that Bosch had considered and rejected Drew's non-infringement and invalidity arguments, and Herron responded that Drew was not interested in licensing the '313 patent. (Herron Decl. ¶ 22.)

On November 16, 2011, Drew filed the instant complaint against Bosch, seeking a declaratory judgment that none of its products infringe the '313 patent and that the '313 patent is invalid and/or unenforceable. (Compl. ¶¶ 29, 33, Dkt. # 1.) Bosch amended its complaint in the California litigation on November 23, 2011, to add Drew as a party and expand its allegations of infringement to all CarDAQ products. (C.D. Cal. Am. Compl. ¶¶ 4, 26-37, Dkt. # 12-6.)

In lieu of filing an answer to Drew's complaint in this court, Bosch filed the instant motion on December 21, 2011, claiming that: (1) the court should dismiss the case for lack of subject-matter jurisdiction because there was no Article III controversy between Drew and Bosch at the time Drew filed the complaint; and (2) the court should dismiss, transfer, or stay the case under the first-to-file rule, which provides that, as a matter of comity, this court should refrain from adjudicating this dispute and instead allow the California litigation to proceed to judgment. (*See* Mot. Dismiss, Transfer, Stay 2d-Filed Action 2-3, Dkt. # 10.) On January 5, 2012, Drew and Snap-On filed a motion in the

California litigation, requesting dismissal of that action for failure to state a claim or, in the alternative, a transfer of that case to this court "[f]or the convenience of parties and witnesses [and] in the interest of justice" under 28 U.S.C. § 1404(a). (*See* C.D. Cal. Mot. Dismiss & Transfer Venue, Dkt. # 12-7.)

## II. STANDARD

### A. Subject-Matter Jurisdiction

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 173-80 (1803)). A defendant can move to dismiss a claim for lack of subject-matter jurisdiction, and the plaintiff has the burden of proving jurisdiction in order to survive the motion. Fed. R. Civ. P. 12(b)(1); *Mich. S. R.R. Co. v. Branch & St. Joseph Cnty. Rail Users Ass'n., Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990)); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."). In reviewing a facial challenge to the jurisdictional basis of a complaint, the court must "'construe the complaint in a light most favorable to the plaintiff, accept as true all of plaintiff's well-pleaded factual allegations, and determine whether the plaintiff can prove no set of facts supporting [the] claims that would entitle him to relief." *Mich. S. R.R. Co.*, 287 F.3d at 573 (alteration in original) (quoting *Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 408 (6th Cir. 1997)). Where a defendant brings a

motion to dismiss on multiple grounds, courts are "bound to consider the 12(b)(1) motion first, since the [alternative] challenge[s] become[] moot if th[e] court lacks subject matter jurisdiction." *Moir,* 895 F.2d at 269 (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

Here, Plaintiff asserts jurisdiction under the Declaratory Judgment Act, which provides that a federal court presented with "a case of actual controversy within its jurisdiction . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). To satisfy the "actual controversy" requirement, a declaratory-judgment action must present a justiciable "case" or "controversy" under Article III of the Constitution. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), the Supreme Court described this standard as follows:

> Our decisions have required that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." [*Haworth*, 300 U.S. at 240-241.] In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941), we summarized as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

549 U.S. at 127.

### B. First-to-File Rule

"The 'first-filed' or 'first-to-file' rule is 'a well-established doctrine that encourages comity among federal courts of equal rank. The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment.'" *Nartron v. Corp. v. Quantum Research Grp., Ltd.*, 473 F. Supp. 2d 790, 795 (E.D. Mich. 2007) (quoting *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001)). "Factors to be considered in the application of the rule are '(1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake.'" *Id.* (quoting *Plating Res., Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 903-04 (N.D. Ohio 1999)). A court that has determined the first-to-file rule applies to a second-filed case has discretion to transfer, stay, or dismiss the second case. *E.g.*, *Elite Physicians Servs., LLC v. Citicorp Credit Servs., Inc. (USA)*, No. 1:06-CV-86, 2007 WL 1100481, at *4 (E.D. Tenn. Apr. 11, 2007).

In patent-infringement cases, the Federal Circuit "appl[ies] the general rule favoring the forum of the first-filed case, 'unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise.'" *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (quoting *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *overruled on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)). Though exceptions to the rule are "not rare," there must be "sound reason that would make it unjust or inefficient to continue the first-filed action." *Genentech*, 998 F.2d at 937, 938.

### III. DISCUSSION

#### A. Subject-Matter Jurisdiction

6

Bosch first contends that the present action should be dismissed because, at the time Drew filed the complaint, "there was not a substantial controversy of sufficient immediacy and reality between Bosch and Drew" to constitute a "case" or "controversy" under Article III or satisfy the "actual controversy" requirement of the Declaratory Judgment Act. (Mot. Dismiss, Transfer, Stay 2d-Filed Action 10.) Specifically, Bosch claims that it made "no affirmative act or direct threat" of an infringement suit against Drew, pointing out that Drew initiated communication with Bosch concerning the '313 patent after learning of the California litigation. (*Id.* at 10-11.)

The uncontested facts alleged by Drew clearly demonstrate a "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 126 (internal quotation marks omitted). Post-*MedImmune*, a plaintiff seeking a declaratory judgment that its product does not infringe on another's patent need no longer demonstrate "conduct by the patentee creat[ing] a reasonable apprehension . . . that [the plaintiff] will face an infringement suit." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1379 (Fed. Cir. 2007). Rather, "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise." *Id.* at 1381.

Before Drew filed its complaint in this court, a representative of Bosch had communicated to Drew's representatives that Bosch believed the CarDAQ and Pass-Thru Pro II devices infringed Bosch's valid '313 patent. (Compl. ¶¶ 21-22.) Bosch's representative had also asserted that Drew needed a license from Bosch to produce

7

and sell those products, and Drew's representatives had refused the licensing offer and denied that Drew was infringing the '313 patent. (*Id.*) Furthermore, these communications were happening against the backdrop of Bosch's already-filed infringement suit targeting the Pass-Thru Pro II system in the Central District of California. (*Id.* ¶ 15). Under these facts, Bosch irrefutably "show[ed] a preparedness and willingness to enforce its patent rights" against Drew's products, such that a justiciable controversy was established. *SanDisk*, 480 F.3d at 1383; *see also Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987) ("The purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights."). The court will not dismiss Drew's complaint for lack of subject-matter jurisdiction.

### B.  First-to-File Rule

Bosch also argues that, because the California litigation was filed before this suit, the court should dismiss, transfer, or stay this action under the first-to-file rule. Drew, recognizing that this case and the California litigation involve nearly identical parties and issues, concedes that "Bosch's Central District of California complaint was technically filed before Drew's complaint here," (Resp. Opp'n Mot. Dismiss, Transfer, Stay 2d-Filed Action 1, Dkt. # 12), despite the fact that Bosch did not amend its complaint to add Drew as a defendant or claim infringement regarding the CarDAQ products until after Drew filed its declaratory judgment action, *see Barnes & Noble, Inc. v. LSI Corp.*, --- F. Supp. 2d ----, 2011 WL 4948598, at *5 (N.D. Cal. 2011) (collecting cases supporting proposition that "the filing of a complaint triggers the first-filed rule, regardless of whether the plaintiff later amends the complaint"); *Time Warner Cable, Inc. v. USA*

*Video Tech. Corp.*, 520 F. Supp. 2d 579, 586 (D. Del. 2007) (holding that two actions concerned same subject-matter for purposes of first-filed rule when both involved same patent, facts, and technology).[1]

Nevertheless, Drew claims that this suit, rather than the California litigation, should go forward, based on the customer-suit exception to the first-to-file rule as well as equitable considerations that favor the Eastern District of Michigan as the proper venue for this dispute. Because the court concludes that the customer-suit exception does not apply here and that the Central District of California is the proper forum to weigh the equitable considerations and determine which suit should proceed, the court will dismiss this action without prejudice pending the disposition of Drew and Snap-On's motion to dismiss and/or transfer venue in the Central District of California.

### 1. The Customer-Suit Exception

The Federal Circuit has recognized a customer-suit exception to the first-to-file rule in certain patent cases, "whereby litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). "At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit." *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977), *quoted in Katz*,

---

[1] Drew brings attention to the fact that its complaint was served on Bosch before Bosch served its complaint on Drew and Snap-On. (*See, e.g.*, Resp. Opp'n Mot. Dismiss, Transfer, Stay 2d-Filed Action 20.) However, it is the date of filing, not the date of service, that determines which action takes precedence under the first-to-file rule. *See, e.g.*, *Marianna Imps., Inc. v. Helene Curtis, Inc.*, 873 F. Supp. 308 (D. Neb. 1994).

909 F.2d at 1464. "[I]t is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, in order to avoid the damaging impact of an adverse ruling against its products." *Id.* at 738, *quoted in Katz*, 909 F.2d at 1464. "[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy." *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).

Drew argues that the customer-suit exception applies here, relying heavily on this court's unpublished decision in *Delphi Corp. v. Auto. Techs. Int'l, Inc.*, No. 08-CV-11048, 2008 WL 2941116 (E.D. Mich. July 25, 2008). In *Delphi*, the court invoked the customer-suit exception in declining to dismiss, transfer, or stay a declaratory judgment action brought by the manufacturer of products that were at issue in a first-field infringement suit against seven of Delphi's customers. However, there is a principal distinction between the current dispute and *Delphi*: here, Drew, the manufacturer, is a party to the first-filed litigation pending in the Central District of California, whereas Delphi was not a party in the infringement litigation against its customers. Indeed, in all of the cases identified by Drew in which a second-filed declaratory-judgment suit was allowed to proceed under the customer-suit exception, the manufacturer was not a party to the first-filed infringement suit. *See Kerotest Mfg. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 186 (1952) ("If the patentee's suit against a customer is brought in a district where *the manufacturer cannot be joined as a defendant*, the manufacturer may be permitted simultaneously to prosecute the declaratory judgment action elsewhere." (emphasis added)); *Air Prods. & Chems., Inc. v. MG Nitrogen Servs., Inc.*, 133 F. Supp. 2d 354, 356-57 (D. Del. 2001) ("[I]t is undisputed that Air Products, the manufacturer of

a device used to infringe the claims of the patents-in-suit, can be named as a defendant in Texas. Thus, the [customer-suit exception] does not apply." (citation omitted)).

When the manufacturer not only can be, but is a party to the first-filed litigation, the rationale behind the customer-suit exception is weakened to the point of irrelevancy. In that circumstance, the manufacturer is able to fully protect its interests by defending against the patentee's charges of infringement in the first-filed action. The complaint filed by Bosch against Drew in the Central District of California involves the same patent and products on which Drew seeks a declaratory judgment in this court. With the issues presented here being duplicative of Bosch's claims in the first-filed litigation, principles of efficiency and judicial economy cut against allowing this second-filed action to proceed.

## 2. Equitable Considerations

In the Federal Circuit, the first-to-file rule gives way to "considerations of judicial and litigant economy, and the just and effective disposition of disputes." *Genentech*, 998 F.2d at 937. "The first-filed suit rule, for instance, will not always yield the most convenient and suitable forum. Therefore, the trial court weighing jurisdiction additionally must consider the real underlying dispute: the convenience and suitability of competing forums." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). "The convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, or considerations relating to the interest of justice must be evaluated to ensure the case receives attention in the most appropriate forum." *Id.* at 904-05.

Drew asserts that this action should not be dismissed, stayed, or transferred because, even though it was filed second, the Eastern District of Michigan is the proper venue for determining the validity and potential infringement of the '313 patent. In support of this position, Drew alleges that: both Drew and Bosch are headquartered in this district; Drew manufactures the CarDAQ and Pass Thru Pro II products in this district; there are a number of important party and non-party witnesses located in this district; and all significant evidence is located in this district or outside of the Central District of California. In contrast, Drew points out that the Central District of California has no connection to this dispute beyond the fact that Drew and Snap-On offer the allegedly infringing products for sale in that district.

Although Drew's argument in favor of the Eastern District of Michigan as the more convenient forum may appear sound, the determination of the appropriate venue for this dispute should not be made in this court. Rather, that decision should be left to the Central District of California as the first-filed court. In *Daimler Chrysler Corp. v. Gen. Motors Corp.*, 133 F. Supp. 2d 1041 (N.D. Ohio 2001), that court, after an exhaustive consideration of first-to-file cases, concluded that "[i]t is . . . more appropriate, as a matter of judicial comity, for the court of first filing to determine whether to retain or relinquish jurisdiction, rather than leave it to the court of later filing to make that decision," *id.* at 1044; *accord Kimberly-Clark Corp. v. McNeil-PPC, Inc.*, 260 F. Supp. 2d 738, 740-41 (E.D. Wis. 2003) ("[W]hen at least one claim in a first-filed action 'mirrors' claims brought in a later-filed action, the determination of which case should go forward must be left to the judge in the first-filed action."). Like the court in *Diamler Chrysler*, this court could find no case in which "the second-filing court . . .

12

arrogate[d] [a first-to-file] decision to itself," *Diamler Chrysler*, 133 F. Supp. 2d at 1044, except for cases applying the customer-suit exception, *see, e.g.*, *Delphi*, 2008 WL 2941116, or finding blatant evidence of forum shopping by the first-filed plaintiff, *see, e.g.*, *Emergency Dictation Servs., Inc. v. CBay Sys., Ltd.*, No. 05-72137, 2005 WL 2769006 (E.D. Mich. Oct. 25, 2005). *See also Kucala Enters., Ltd. v. Auto Wax Co.*, No. 02 C 1403, 2002 WL 1586415 (N.D. Ill. July 18, 2002) (holding transfer of second-filed suit was not warranted when first-filed court had stayed its proceedings to allow second-filed court to determine whether first-to-file rule should apply). Neither of these circumstances are present here.[2]

In the court's view, principles of comity and judicial economy militate towards allowing the Central District of California decide where this dispute should be litigated. A determination by this court that the equitable considerations advanced by Drew favor this forum over the Central District of California would constitute inappropriate respect for a co-equal district court. Additionally, such a decision could lead to duplicative litigation concerning Drew's alleged infringement of the '313 patent, a result to be avoided where possible. Accordingly, the court deems it appropriate to dismiss this

---

[2]In a footnote in its response, Drew argues as follows:

> Given the timing of Bosch's original California filing on the eve of scheduled mediation with Snap-on [sic] and the absence of any significant contacts to the Central District of California, it would be well within reason for the Court to question whether the bad faith and forum shopping exceptions to the first-to-file rule also apply.

(Resp. Opp'n Mot. Dismiss, Transfer, Stay 2d-Filed Action 7 n.3.) The court finds no basis, however, to conclude that Bosch's decision to file the California complaint was motivated by a desire to forum shop a dispute with Drew.

13

case, without prejudice. Time will tell whether the Central District of California proceeds with Bosch's complaint, dismisses it, or transfers it.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Bosch's "Motion to Dismiss, Transfer, or Stay Second-Filed Action" [Dkt. # 10] is GRANTED IN PART AND DENIED IN PART.  It is DENIED in that this matter will not be dismissed for lack of subject-matter jurisdiction.  It is GRANTED in that this matter will be dismissed without prejudice to allow the Central District of California as the first-filed court to determine the appropriate forum for the litigation of this dispute.

IT IS FURTHER ORDERED that the February 8, 2012 motion hearing is CANCELLED.

IT IS FURTHER ORDERED that this case is DISMISSED WITHOUT PREJUDICE.  Nothing in this order shall be deemed to adversely affect or in any way impact the parties' rights as they now exist in this litigation.  Upon the dismissal without prejudice or transfer to this court of Bosch's patent-infringement complaint in the Central District of California, any party may reopen this case by filing a "Notice of Reopening." If such a notice is filed, the case will immediately be placed back on the court's active docket with no further costs or fees to either party, and the litigation will proceed as if the case had not been dismissed.

      s/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated:  January 31, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 31, 2012, by electronic and/or ordinary mail.

 s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522